**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
Wheeling**

**VIRGIL LAMB,**

Plaintiff,

v.                                                      **Civil Action No.: 5:22-CV-217**
                                                        Judge Bailey

**TIMOTHY TIBBS,
MICHAEL COSTELLO,
SHANNON SAMS,** and
**SUPERINTENDENT JOSEPH WOOD,**

Defendants.

## REPORT AND RECOMMENDATION

### I. Background

Plaintiff initiated this action on September 8, 2022, by filing a Complaint under 42 U.S.C. § 1983.  At the time the allegations in this case occurred, plaintiff was a pretrial detainee at North Central Regional Jail and Correctional Facility ("NCRJ").  On November 20, 2022, defendants Sams and Wood filed a Motion to Dismiss the Complaint, [Doc. 15], along with a memorandum in support.  On December 12, 2022, plaintiff filed a response to the Motion, [Doc. 25], and on December 19, 2022, defendants Sams and Wood filed a reply [Doc. 26].  Further, on January 3, 2023, defendants Tibbs and Costello filed a Motion for Judgment on the Pleadings [Doc. 30], along with a memorandum in support.  On January 12, 2023, plaintiff filed a response to the Motion, [Doc. 36], and on January 19, 2023, defendants Tibbs and Costello filed a reply [Doc. 38].  These matters are now fully briefed and ripe for decision.  This matter is assigned to the Honorable John Preston Bailey, United States District Judge, and it is referred to the undersigned United States

Magistrate Judge for submission of proposed findings and recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B).  For the reasons that follow, the undersigned recommends that Defendants Shannon Sams and Superintendent Joseph Wood's Motion to Dismiss Plaintiff's Complaint [Doc. 15] be granted in part and that Defendants Timothy Tibbs and Michael Costello's Motion for Judgment on the Pleadings [Doc. 30] be denied.

## II. The Complaint

According to the Complaint, at the time of the allegations, plaintiff was a pretrial detainee incarcerated at NCRJ.  [Doc. 1 at ¶ 2].  Defendants are individuals employed at the NCRJ: defendant Wood is the Superintendent, defendants Costello and Tibbs were correctional officers, and defendant Sams was a captain.  [Id. at ¶¶ 4–7].  Upon arrival, plaintiff was housed in Unit A1, cell 8, for approximately two weeks.  [Id. at ¶ 12].  Unit A1 had damage including damaged cell doors which could not be locked and a light with exposed wires.  [Id. at ¶ 13].  Following an incident in that unit, all individuals housed in cells with broken doors, including plaintiff, were moved to Unit A5; there, plaintiff was placed in a cell which was empty but-for a mat and was only permitted to wear underwear for twenty-four hours.  [Id. at ¶¶ 16–20].  The following day, plaintiff was moved to a cell in Unit A8.  [Id. at ¶ 22].

In Unit A8, plaintiff and his cellmates were without toilet paper for several days. [Id. at ¶ 24].  On May 6, 2022, Lamb complained to defendant Costello about the lack of toilet paper, who told Lamb he would get them toilet paper when he felt like it, prompting Lamb to respond "That ain't right, man."  [Id. at ¶ 25–27].  In response, plaintiff alleges that Costello dropped the bean hole to the cell and deployed oleoresin capsicum spray

2

("OC spray") into the cell, spraying Lamb and his cellmates; after deploying his cannister, Costello deployed another canister given to him by another correctional officer.  [Id. at ¶ 28–29].

Plaintiff further alleges that during his time in Unit A8 he was under severe restrictions, including lack of access to hygiene products including toilet paper, denied access to showers and recreation time, writing materials, and the ability to access a phone or speak to his criminal defense attorney.  *See* [Id.].  Plaintiff alleges that this was done as part of a "Step Down Program" implemented formally or informally at NCRJ in which all individuals spent two weeks at "Level I" with the above restrictions.  [Id. at ¶ 50].

Plaintiff alleges that during this time, he was denied access to his criminal defense attorney during his criminal case.  [Id. at ¶ 78].  He alleges that his attorney was unable to reach him when calling NCRJ, that an associate of his attorney was denied an in-person meeting, with the facility citing COVID-19 restrictions, and that he was denied requests to make a phone call to his attorney.  [Id. at ¶¶ 79–82].  As a result, his attorney was unable to discuss a plea agreement with plaintiff, delaying his eventual guilty plea and causing him to spend a significant amount of time in custody before being released on post-conviction bond.  [Id. at ¶¶ 86–87].

Plaintiff further alleges that, prior to transfer to Unit A8, his Bible had been taken from him; when he requested a Bible from defendant Costello, he was denied and was without a Bible until over month in segregation.  [Id. at ¶¶ 64–67].

The Complaint raises seven claims.  First, plaintiff brings a claim for excessive force against Costello, Sams, and Wood based on the May 6 incident.  Second, plaintiff brings against all four defendants a claim for violation of his due process right to be free

from punishment from his placement in disciplinary segregation.  Third, plaintiff brings a claim against all four defendants for violation of his due process right to be free from punishment from the deprivations that occurred while at NCRJ.  Fourth, plaintiff alleges all four defendants violated his Sixth Amendment right to effective assistance of counsel by denying him access to his attorney.  Fifth, he alleges all four defendants violated his First Amendment right to free speech by denying him the ability to communicate with his attorney.  Sixth, he alleges that all four defendants violated his First Amendment right to freedom of religion by denying him a Bible.  Finally, plaintiff brings a claim against defendant Costello for assault and battery in relation to the May 6 incident.

### III. Motion to Dismiss

In the Motion to Dismiss, defendants Sams and Wood argue that the six claims against them should be dismissed for failure to state a claim.  First, they argue that there are no allegations of excessive force as to Sams or Wood, nor any personal constitutional violation linking them to this claim.  Second, they argue that there are not facts to support the claim that they were deliberately indifferent; they contend "[t]here are no supporting factual allegations that plausibly support a conclusion that either Sams or Wood personally knew of and disregarded a substantial risk of serious harm to Mr. Lamb." [Doc. 16 at 10].  They contend that plaintiff has only made allegations which support a claim against Sams and Wood based on their supervisory positions, which is not cognizable under § 1983.  Third, they argue that there are no allegations that either Sams or Wood denied plaintiff due process.  Similar to their previous argument, they contend that plaintiff fails to allege they were individually responsible for Lamb's placement in segregation.  Fourth, they argue that the conditions of confinement alleged by plaintiff do

not rise to the level of a Fourteenth Amendment violation, and that plaintiff likewise fails to allege individual involvement on the part of Sams or Wood.  Fifth, they argue that plaintiff has not alleged that Sams or Wood personally denied him access to counsel, and that such a claim fails because it would necessarily imply the invalidity of plaintiff's conviction or sentence.  For the same reasons, they argue the First Amendment freedom of speech claim fails to allege facts sufficient to support the claim.  Seventh, they argue that the allegations related to denial of religious materials do not allege any personal involvement by Sams or Wood.

Further, defendants Sams and Wood argue that they are entitled to qualified immunity because plaintiff has failed to establish a violation of plaintiff's constitutional rights.

Finally, defendants argue that plaintiff's requests for injunctive or declaratory relief are moot because he has since been released from NCRJ.

## IV. Motion for Judgment on the Pleadings

In the Motion for Judgment on the Pleadings, defendants Tibbs and Costello argue, first, that Claim I, the claim for excessive force, must be dismissed against defendant Tibbs because there is no allegation he used any force against plaintiff.  Second, that Claim II must be dismissed because neither Tibbs nor Costello subjected plaintiff to disciplinary segregation.  Third, that Claim III similarly fails because neither of them are alleged to have exposed plaintiff to unconstitutional confinement conditions.  Fourth, that Claims IV and V fail to state a claim because it is not alleged that either of them prevented plaintiff from communicating with his attorney.  Fifth, that the religious freedom claim fails to state a claim against them because neither of them played an individual role in

preventing plaintiff from accessing religious materials.  Finally, they argue that Claim VII

fails to state a claim against defendant Tibbs because it is not alleged that he used or

threatened to use force against plaintiff.

In response, plaintiff argues, *inter alia*, that the motion should be denied as

untimely; plaintiff points out that a 12(c) motion is filed *after* the pleadings have closed,

but that defendants Sams and Wood have not yet filed an answer.

### V. Standard of Review

**A.   Section 1983 Claims**

The Supreme Court has held that:

> Title 42 U.S.C. § 1983 provides a cause of action against
> "[e]very person who, under color of any statute ... of any State
> ... subjects, or causes to be subjected, any citizen ... to the
> deprivation of any rights, privileges, or immunities secured by
> the Constitution and laws...." The purpose of § 1983 is to deter
> state actors from using the badge of their authority to deprive
> individuals of their federally guaranteed rights and to provide
> relief to victims if such deterrence fails.

*Wyatt v. Cole*, 504 U.S. 158, 161 (1992) (citing *Carey v. Piphus*, 435 U.S. 247,

254–257 (1978)).   In *Gomez v. Toledo*, 446 U.S. 635 (1980), the Supreme Court

succinctly stated what a plaintiff must allege to sustain a civil rights action:

> By the plain terms of § 1983, two—and only two—allegations
> are required in order to state a cause of action under that
> statute. First, the plaintiff must allege that some person has
> deprived him of a federal right. Second, he must allege that
> the person who has deprived him of that right acted under
> color of state or territorial law.

*Gomez*, 446 U.S. at 640.

6

**B.**    **Motion to Dismiss**

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. *Mylan Labs, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993); *see also Martin*, 980 F.2d at 952.

The Federal Rules of Civil Procedure "require only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). In *Twombly*, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations," but must contain more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Conley*, 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* (citations omitted), to one that is "plausible on its face," [*Id.* at 570], rather than merely "conceivable." *Id.* Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (citing *Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002); *Iodice v. United States*, 289 F.3d 279, 281 (4th Cir. 2002)). In so doing, the

complaint must meet a "plausibility" standard, instituted by the Supreme Court in *Ashcroft v. Iqbal*, where it held that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. *Id*.

## VI. Applicable Law

**A.     Qualified Immunity**

Qualified immunity protects government officials from money damages unless it can be shown "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). To determine whether qualified immunity applies, courts must, "as a threshold matter, determine whether a constitutional or statutory right was deprived" and "[i]f there was no deprivation of such a right, then a defendant is entitled to qualified immunity and the Court need not inquire further." *Minor v. Yanero*, 2008 WL 822102, at *3 (N.D. W.Va. Mar. 26, 2008) (Stamp, J.). "[I]f the constitutional right was sufficiently clear such that an objectively reasonable officer in a defendant's position would have understood his conduct to have violated the right, qualified immunity does not apply. *Porterfield v. Lott*, 156 F.3d 563, 567 (4th Cir. 1998); *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)." *Holley v. Foxx*, No. 17-CV-3140, 2021 WL 3666463, at *11 (D. Md. Aug. 18, 2021).

**B.    Supervisory Liability Under § 1983**

"Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*."  ***Ashcroft v. Iqbal***, 556 U.S. 662, 676 (2009).  "Because vicarious liability is inapplicable to ***Bivens*** and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  ***Id***.  "A ***Bivens*** claim is brought against the individual official for his or her own acts, not the acts of others."  ***Ziglar v. Abassi***, 137 S.Ct. 1843, 1860 (2017).

Supervisory liability under § 1983 is established when three elements are met:

(1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices,"; and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

***Shaw v. Stroud***, 13 F.3d 791, 799 (4th Cir. 1994).  The Court further explained that, "[t]o satisfy the requirements of the first element, a plaintiff must show the following: (1) the supervisor's knowledge of (2) conduct engaged in by a subordinate (3) where the conduct poses a pervasive and unreasonable risk of constitutional injury to the plaintiff."  ***Id***. at 799 (citing ***Slakan v. Porter***, 737 F.2d 368 (4th Cir. 1984)).

"Constructive notice can be alleged in multiple ways, including the existence of written reports of conditions at a detention facility, or a supervisor's high level of responsibility coupled with the violations alleged to have occurred on her or his watch."  ***Jones v. Murphy***, 470 F. Supp. 2d 537, 546 (D. Md. 2007).  "[I]t has been established that the plaintiff bears a heavy burden of proof which cannot be satisfied by pointing to a

single incident or isolated incidents because 'a supervisor cannot be expected to promulgate rules and procedures covering every conceivable occurrence within the area of his responsibility.'" **Leonard v. Starkey**, No. 1:14-CV-42, 2017 WL 354851, at *8 (N.D. W.Va. Jan. 24, 2017) (quoting **Slakan v. Porter**, 737 F.2d 368, 373 (4th Cir. 1984)).

Turning to the second element, "[a] plaintiff may establish deliberate indifference by demonstrating a supervisor's 'continued inaction in the face of documented widespread abuses'; however, a plaintiff claiming deliberate indifference 'assumes a heavy burden of proof." **Shaw**, 13 F.3d at 799. "Causation is established when the plaintiff demonstrates an "affirmative causal link" between the supervisor's inaction and the harm suffered by the plaintiff." **Id**.

Finally, the third element can be established "when the plaintiff demonstrates an 'affirmative causal link' between the supervisor's inaction and the harm suffered by the plaintiff." **Shaw**, 13 F.3d at 799 (citations omitted). "Establishing a 'pervasive' and 'unreasonable' risk of harm requires evidence that the conduct is widespread, or at least has been used on several different occasions and that the conduct engaged in by the subordinate poses an unreasonable risk of harm of constitutional injury." **Shaw**, 13 F.3d at 799.

<u>**VII. Analysis**</u>

**A.    Timing of the Motion for Judgment on the Pleadings**

Plaintiff is no doubt correct that a motion for judgment on the pleadings is available *after* the pleadings are closed. Fed R. Civ. P. 12(c). "[T]he pleadings are not closed until all defendants have filed an answer, even when one defendant has filed a motion to dismiss instead of answering." **Nationwide Children's Hosp., Inc. v. D.W. Dickey &**

*Son, Inc. Emp. Health & Welfare Plan*, No. 2:08-CV-1140, 2009 WL 5247486, at *1 (S.D. OH Dec. 31, 2009).  A court may deny a motion for judgment on the pleadings if, when the motion was filed, pleadings were not closed because one or more defendants had filed a motion to dismiss rather than an answer.  *See Garvey v. Seterus, Inc.*, No. 5:16-CV-00209-RLV, 2017 WL 2722307, at *12–13 (W.D. N.C. June 23, 2017). Nonetheless, this Court may treat the Motion as one for failure to state a claim under 12(b)(6).  *See Little v. F.B.I.*, 793 F. Supp. 652, 653 (D. Md. 1992), *aff'd*, 1 F.3d 255 (4th Cir. 1993) (treating a Motion under 12(c) as one under 12(b)(6) where "it would appear that a motion for judgment on the pleadings is plainly inappropriate here, because the pleadings have not been closed by answers from all defendants . . .. At any rate, the Rule 12(c) motion is treated as fungible with the Rule 12(b)(6) motion when the gravamen of the motion is a challenge to the legal sufficiency of the complaint.") (citation omitted). Denying the motion for judgment on the pleadings as untimely would be without prejudice, and defendants Tibbs and Costello would be free to bring essentially the same motion once defendants Sams and Wood had either been dismissed or filed an Answer. Accordingly, the undersigned recommends that Defendants Timothy Tibbs and Michael Costello's Motion for Judgment on the Pleadings [Doc. 30] be treated as one under 12(b)(6).

## B.   Count I – Excessive Force

"Excessive force claims of a pretrial detainee [or arrestee] are governed by the Due Process Clause of the Fourteenth Amendment."  *Orem v. Rephann*, 523 F.3d 442, 446 (4th Cir. 2008).  The Fourteenth Amendment protects pretrial detainees from uses of excessive force which amount to punishment.  *Graham v. Connor*, 490 U.S. 386, n. 10

(1989) (citing *Bell v. Wolfish*, 441 U.S. 520, 535–539 (1979) ("For under the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law. . .. A person lawfully committed to pretrial detention has not been adjudged guilty of any crime.") (citations omitted)).  To prevail on an excessive force claim under § 1983, "a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable."  *Kingsley v. Hendrickson*, 576 U.S. 389, 396–97 (2015).  In *Kingsley*, the Supreme Court set forth several examples of considerations in determining whether force was objectively unreasonable:

> Considerations such as the following may bear on the reasonableness or unreasonableness of the force used: the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting. . .. We do not consider this list to be exclusive. We mention these factors only to illustrate the types of objective circumstances potentially relevant to a determination of excessive force.

*Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015) (citation omitted).  The due process rights of a pre-trial detainee "are at least as great as the Eighth Amendment protections available to a convicted prisoner."  *City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 244 (1983).

Here, the excessive force complained of occurred when defendant Costello deployed two cans of OC spray into plaintiff's cell.  There can be little doubt that the allegations in the Complaint, taken as true, set forth a claim for excessive force; however, there is no allegation that Sams or Wood used force against plaintiff.  Instead, plaintiff's theory of liability against these defendants is premised on supervisory liability.  Plaintiff alleges that both Sams and Wood were aware, or should have been aware, of defendants

Costello's and Tibbs' patterns and practices of using excessive force on individuals incarcerated at NCRJ. [Doc. 1 ¶¶ 91, 96]. Plaintiff alleges two other occasions in which defendant Tibbs used excessive force against other inmates: first, on May 5, 2022, one day before the alleged excessive force in this case, plaintiff witnessed Tibbs deploy OC spray against three inmates in the same unit as plaintiff. [Id. at ¶ 90]. Second, that in early June, *after* the incident in this case, plaintiff witnessed Tibbs use excessive force against an inmate during a recreation period. [Id.]. Plaintiff further alleges that this was part of a larger pattern of deploying OC spray against inmates. [Id. at 88]. Plaintiff alleges that defendants Sams and Wood failed to take action to discipline or otherwise curb the pattern of excessive force by Tibbs and Costello. [Id. at ¶¶ 92, 94, & 97].

The undersigned finds that the Complaint states a claim against Sams and Wood for excessive force based on supervisory liability. First, the allegations, taken as true, show that these defendants had actual or constructive knowledge of a pattern of conduct by defendants Tibbs and Costello which posed a pervasive risk of constitutional injury to individuals incarcerated at NCRJ. In particular, the day before the use of OC spray against plaintiff, a similar incident is alleged to have occurred in which defendant Tibbs deployed OC spray against inmates in another cell in Unit A8. The Complaint plausibly sets forth that this was part of a widespread pattern using excessive force, and this clearly presented an unreasonable risk of harm of a constitutional injury.

Likewise, given the allegations of similar previous incidents and of a known pattern of excessive force, plaintiff has sufficiently alleged that defendants Sams and Wood showed "deliberate indifference or tacit authorization of the alleged offensive practices." *Shaw*, 13 F.3d at 799; *see also Danser v. Stansberry*, 772 F.3d 340, 350 (4th Cir. 2014)

("A supervisor may be held liable under a tacit authorization theory if that supervisor fails to take action in response to a known pattern of comparable conduct occurring before the incident at issue took place.").

Finally, the undersigned finds that there is an affirmative causal link between defendants Sams' and Wood's inaction and plaintiff's constitutional injury.  A supervisor is liable for the "natural consequences of his actions."  **Shaw v. Stroud**, 13 F.3d 791, 800 (4th Cir. 1994).  Here, there is a clear affirmative causal link between Sams' and Wood's alleged inaction and the May 6, 2022 incident.

Turning to defendants Sams' and Wood's defense of qualified immunity, the undersigned finds that it is inapplicable to the first count of the Complaint.  Inmates have a clearly established right to be free of excessive use of chemical agents such as OC spray.  Analyzing this right in the Eight Amendment context over twenty years ago, the Fourth Circuit stated: "It is generally recognized that 'it is a violation of the Eighth Amendment for prison officials to use mace, tear gas or other chemical agents in quantities greater than necessary or for the sole purpose of infliction of pain.'"  **Williams v. Benjamin**, 77 F.3d 756, 763 (4th Cir. 1996) (citation omitted).

Accordingly, the undersigned recommends that the Court deny the Motion to Dismiss as to Count One of the Complaint.

Turning to the Motion for Judgment on the Pleadings, defendants Tibbs and Costello concede that the Complaint states a claim against defendant Costello but argue for dismissal of the claim as to defendant Tibbs.  As plaintiff points out, the Complaint does not include Tibbs in this claim, and the undersigned therefore recommends that this portion of the motion be denied as moot.

**C.      Counts II & III – Due Process Claims**

Pretrial detainees have a constitutional right to be free from punishment.  ***Bell v. Wolfish***, 441 U.S. 520, 535 (1979) ("For under the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law."). This principle has been applied to substantive and procedural due process claims brought by pretrial detainees.  ***Williamson v. Stirling***, 912 F.3d 154, 174 (4th Cir. 2018) (citations omitted).

"Typically, a substantive due process claim pursued by a pretrial detainee challenges the general conditions of confinement or the treatment of all detainees in a specific facility."  ***Williamson v. Stirling***, 912 F.3d 154, 174 (4th Cir. 2018).  The relevant question is whether the restriction imposed on the pretrial detainee amounted to "punishment."  ***Id.***, citing ***Bell***, 441 U.S. at 535–539.  To show that a restriction was "punishment" the pretrial detainee must show the restriction was either: "(1) imposed with an expressed intent to punish or (2) not reasonably related to a legitimate nonpunitive governmental objective, in which case an intent to punish may be inferred."  ***Slade v. Hampton Roads Reg'l Jail***, 407 F.3d 243, 251 (4th Cir. 2005) (quoting ***Martin v. Gentile***, 849 F.2d 863, 870 (4th Cir. 1988)).

> Absent a showing of an expressed intent to punish, if a particular condition or restriction is reasonably related to a legitimate nonpunitive governmental objective, it does not, without more, amount to "punishment," but, conversely, if a condition or restriction is arbitrary or purposeless, a court may permissibly infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees qua detainees.
>
> ***Bell v. Wolfish***, 441 U.S. 520, 520–21 (1979).
>
> In contrast, "[a] pretrial detainee challenging individually-imposed restrictions — as

opposed to shared conditions of confinement — is entitled to pursue a procedural due

process claim." ***Williamson v. Stirling***, 912 F.3d 154, 174 (4th Cir. 2018).

> Jail officials may impose nonpunitive restrictions on a pretrial detainee for disciplinary or administrative reasons, but, as these restrictions implicate a detainee's liberty interests, he is entitled to certain procedural protections. [***Williamson***, 912 F.3d] at 174–75. Where restrictions are imposed as a disciplinary measure of institutional misconduct, the detainee must be provided notice, a hearing, and a written explanation of the disciplinary action taken. ***Id***. at 176. Where such restrictions are imposed instead for administrative reasons, the detainee is owed some notice of the proposed action and an opportunity to present his views. ***Id***. at 175-77. In addition, the detainee must be afforded periodic review of his confinement. ***Id***. at 176-77.

***Tate v. Parks***, 791 F. App'x 387, 390 (4th Cir. 2019).  Further, the ***Williamson***

court observed that, although challenges to individualized restrictions generally implicate

procedural due process concerns, "[i]n some circumstances, however, the treatment of a

pretrial detainee can be so disproportionate, gratuitous, or arbitrary that it becomes a

categorically prohibited punishment that will sustain a substantive due process claim."

***Williamson v. Stirling***, 912 F.3d 154, 175 (4th Cir. 2018).

Here, plaintiff alleges that NCRJ had formally or informally instituted a "Step Down

Program" whereby inmates, including plaintiff, were placed in segregation and denied

phone access, phone calls from their attorney, and access to the commissary, and were

on lock down twenty-four hours a day.  [Doc. 1 at ¶ 50].  The Complaint does not allege

that there was an expressed intent to punish, and therefore the undersigned must

determine whether plaintiff's placement in Units A5 and then A8 was "not reasonably

related to a legitimate nonpunitive governmental objective."  The Complaint contains

allegations indicating that the A1 unit had damages which may have necessitated moving

inmates to another unit: cell doors were damaged and could not be locked and a light was

damaged so that exposed wires were used by inmates to start a fire.  [Doc. 1 at ¶¶ 13–14].  It appears on the face of the Complaint that plaintiff's initial move to Unit A5 was part of an effort to remove inmates from the damaged cells in Unit A1.  However, this does not fully explain plaintiff's subsequent move to Unit A8, where the majority of the deprivations in this case are alleged to have occurred, and plaintiff alleges that the move to Unit A8 was part of the "Step Down Program."  *See* [Id. at 52].  While housed on Unit A8, plaintiff alleges he was denied access to hygiene products including toilet paper, that he was denied clean linens and clothing, that he was denied showers, and that he received only minimal recreation time.  [Doc. 1 at ¶¶ 58–60].  Accepting the allegations as true and construing the facts in the light most favorable to plaintiff, the undersigned finds that plaintiff's placement in Unit A8 as part of the restrictive "Step Down Program" was not reasonably related to a nonpunitive governmental objective.

Alternatively, if the restrictions placed on plaintiff as part of the alleged program were reasonably related to a nonpunitive objective, the undersigned finds that the Complaint has adequately alleged a procedural due process claim.  The procedural protections due to a pretrial detainee vary according to whether a restriction was imposed for disciplinary or administrative purposes.  ***Williamson v. Stirling***, 912 F.3d 154, 175 (4th Cir. 2018).  At a minimum, though, "some level of process must be afforded to the pretrial detainee, even if the process is provided after the restriction has been imposed."  ***Williamson v. Stirling***, 912 F.3d 154, 175 (4th Cir. 2018) (citing ***Dilworth v. Adams***, 841 F.3d 246, 255 (4th Cir. 2016)).  As alleged in the Complaint, there was no hearing or write-up related to the restrictions imposed in Unit A8.

The analysis does not end there, however.  Defendants Sams and Wood argue

that plaintiff has failed to allege that they were responsible for deprivations of Lamb's due process rights.   As stated above, to be held liable under § 1983, the Complaint must allege that the defendant acted personally in the deprivation of plaintiff's rights.   The Complaint alleges that defendant Sams was "frequently assigned to work in the segregation unit, particularly Unit A8" and referred to the "Step Down Program" as "the new world order."  [Doc. 1 at ¶ 53].  As to defendant Wood, the Complaint alleges that he approved of the practices taken by the other defendants.  [Id. at 103][1].  "Importantly, mere knowledge of such a deprivation does not suffice." ***Williamson v. Stirling***, 912 F.3d 154, 171 (4th Cir. 2018).  Plaintiff has not alleged how defendant Wood was involved in these alleged deprivations, and, accordingly, the undersigned recommends that these claims be dismissed against defendant Wood.

In contrast, plaintiff has alleged that "Defendants Sams, Tibbs and Costello were frequently assigned to work in the segregation unit, particularly on Unit A8."  [Doc. 1 at ¶ 53].   Taking the allegations related to the deprivations on Unit A8 as a whole, the undersigned finds that plaintiff has plausibly alleged Claims II and III against these three defendants.   Defendants Tibbs and Costello argue that plaintiff cannot show he was subject to "disciplinary segregation" because he fails to allege any infraction for which he was sanctioned.  The reasoning of ***Williamson*** implies a distinction between measures which are "punitive," i.e., punishing the detainee for the crime they are accused of, and

---

[1] In plaintiff's response to the Motion to Dismiss, plaintiff further states that Wood and Sams "have further promulgated, authorized, and condoned long standing policies, procedures, and practices at NCRJ that have violated the rights of pre-trial detainees." [Doc. 25 at 11].  However, the undersigned agrees with defendants that this and several other arguments raised in the response are new allegations not present in the Complaint, and as such are not properly considered on a motion to dismiss for failure to state a claim.

"disciplinary," which, although still "punitive" in the everyday sense of the word, seeks to punish conduct that occurred while in custody.  *See Williamson*, 912 F.3d at 174–175 (4th Cir. 2018) (although *Bell v. Wolfish*, 441 U.S. at 537, distinguishes between punitive measures and regulatory restraints, such "regulatory restraints" include that "jail officials are entitled to discipline pretrial detainees for infractions committed in custody.").  As set forth above, the undersigned finds that the alleged deprivations were not reasonably related to a nonpunitive objective, and as such plaintiff is not required to allege a disciplinary infraction.

Further, the undersigned finds that defendants Sams, Tibbs, and Costello are not entitled to qualified immunity on this claim.  "It has been clearly established since at least 1979 that pretrial detainees are not to be punished. *See Bell*, 441 U.S. at 535, 539 [];  *Robles* [*v. Prince George's County, Maryland*], 302 F.3d [262,] 269 [(4th Cir. 2002)]."  *Williamson*, 912 F.3d at 187 (4th Cir. 2018).

**D.**    **Count IV  – Violation of Right to Counsel**

Under the Sixth Amendment, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence."  U.S. Const. amend. VI.  "The deliberate denial of counsel, absent an intelligent and voluntary waiver, is a deprivation of rights guaranteed by the Sixth and Fourteenth Amendments."  *Carver v. Cnty.*, No. CV 1:16-2528-TMC, 2016 WL 4771287, at *2 (D.S.C. Sept. 14, 2016) (citation omitted).  "[T]o deprive a person of counsel during the period prior to trial may be more damaging than denial of counsel during the trial itself."  *Maine v. Moulton*, 474 U.S. 159, 160 (1985).  "Although the needs of prison security may warrant limitations on the rights of pretrial detainees to the same extent that security needs warrant limitations on the

rights of convicted individuals, **Bell v. Wolfish**, 441 U.S. 520, 544–48, 99 S.Ct. 1861, 1876–79, 60 L.Ed.2d 447 (1979), prison officials cannot, absent some valid justification, totally cut off pretrial detainees' communications with legal counsel or with those who might furnish bail money." **Hearn v. Hudson**, 549 F. Supp. 949, 960 (W.D. Va. 1982).

Here, plaintiff alleges that the alleged "Step Down Program" included preventing inmates, including plaintiff, from making or receiving calls to or from their attorneys. [Doc. 1 at ¶ 50 & 78–79]. Plaintiff further alleges that when his criminal defense attorney called him to discuss a plea deal around May 9, 2022, he was denied because plaintiff was in segregation. [Id. at ¶ 79]. Further, the following day, plaintiff filed a request to access the phone because of "a very important trial coming up" and the request was denied by defendant Sams. [Id. at ¶ 80]. He alleges that a few days later, when an associate of his attorney came to speak in person, he was prevented from doing so and told that plaintiff had been exposed to COVID-19 despite plaintiff never being placed in quarantine. [Id. at ¶¶ 81–82]. Finally, plaintiff was able to meet with his attorney on June 20, 2022, though in a non-contact room, and plaintiff entered a plea deal in his criminal trial the following day. [Id. at ¶¶ 83–84].

Denying pretrial detainees access to private phone calls and consultations with counsel can form the basis of a claim for violations of clearly established rights. **Johnson-El v. Schoemehl**, 878 F.2d 1043, 1051–52 (8th Cir. 1989) (plaintiffs stated a valid claim where they alleged they were effectively able to call their attorney once every two weeks and that calls and conferences with the attorney were conducted within hearing of jail staff); *but see* **Stamper v. Campbell Cnty., Ky.**, 415 F. App'x 678 (6th Cir. 2011) (pretrial

20

detainee's right to counsel was not violated by suspension of telephone access where it was necessitated by the need to maintain safety and security in the jail).

As defendants point out, "when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Heck v. Humphrey*, 512 U.S. 477, 487 (1994). Here, dismissal under *Heck* is inappropriate because judgment in plaintiff's favor would not imply the invalidity of his conviction or sentence. Plaintiff alleges that denying him the ability to communicate with counsel delayed his ability to review and ultimately enter into a plea agreement, which in turn caused him to be held at NCRJ significantly longer in pretrial custody than he otherwise would have been. Judgement in plaintiff's favor in this case would not imply the invalidity of plaintiff's conviction or sentence.

Taking the allegations as true, plaintiff has set forth a plausible basis for violations of his right to counsel. However, for the same reasons as claims two and three, the undersigned finds that this claim should be dismissed against defendant Wood: there are no allegations that Wood was involved in these violations beyond the conclusory allegation that all four defendants violated Lamb's right to speak with counsel, [Doc. 1 at ¶ 156]. Plaintiff has alleged direct involvement by defendant Sams, both in her being one of the staff regularly assigned to the Unit and in denying Lamb's request to a phone call. Accordingly, plaintiff has therefore stated a claim against her.

Turning to the Motion for Judgment on the Pleadings, plaintiff has similarly alleged that defendants Tibbs and Costello were part of the staff involved in the allegedly punitive

segregation, which included prohibiting inmates from contacting their attorneys. Accordingly, plaintiff has likewise stated a claim against defendants Tibbs and Costello.

Further, the undersigned finds that qualified immunity is inapplicable to this claim. As set forth above, plaintiff can show a violation of a constitutional right.  Further, the right to access to the courts, and by extension counsel, was clearly established at the time the allegations occurred.  *See, e.g., Johnson-El v. Schoemehl*, 878 F.2d 1043, 1051–52 (8th Cir. 1989).  Accordingly, the undersigned recommends that claim four be dismissed against defendant Wood only.

**E.      Count V – Violation of Freedom of Speech**

"[A] prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974).  "Although incarcerated persons do not 'shed [their] first amendment rights at the prison portals,' *Brown v. Peyton*, 437 F.2d 1228, 1230 (4th Cir. 1971), courts generally accord deference to the day-to-day judgments of prison officials, *see Turner v. Safley*, 482 U.S. 78, 89 [](1987)." *Haze v. Harrison*, 961 F.3d 654, 658 (4th Cir. 2020).

Defendants Sams and Wood contend, and plaintiff agrees, that *Turner* provides the appropriate test for determining whether a prison regulation restricting plaintiff's First Amendment rights is valid.  As Judge Bailey has previously summarized,

> In *Turner v. Safley*, 482 U.S. 78, 85 (1987), the United States Supreme Court formulated a reasonableness test sensitive to both the need to protect the constitutional rights of inmates and the policy of judicial restraint regarding prisoner complaints. Specifically, the Court determined that when a prison regulation or policy "impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Id*. at 89. Therefore, although a prison regulation may infringe on an inmate's constitutional rights, that infringement is only

actionable to the extent that the regulation is unreasonable. *See Hakim v. Hicks*, 223 F.3d 1244, 1247 (11th Cir.2000), *cert. denied*, 532 U.S. 932, 121 S.Ct. 1382 (2001).

In articulating the *Turner* test, the Court identified several "factors that are relevant to, and that serve to channel, the reasonableness inquiry." *Thornburgh v. Abbott*, 490 U.S. 401, 414 (1989). The *Turner* factors are: (1) whether there is a "valid, rational connection" between the regulation and a legitimate governmental interest put forward to justify it; (2) whether there are alternative means of exercising the asserted constitutional right that remain open to the inmates; (3) whether and the extent to which accommodation of the asserted right will have an impact on prison staff, inmates and the allocation of prison resources generally; and, (4) whether the regulation represents an "exaggerated response" to prison concerns. *Turner* at 89–91; *Shaw v. Murphy*, 534 U.S. 223, 229–30 (2001).

*Lowry v. Bledsoe*, No. CIV. A. 1:04-CV-60, 2007 WL 2788844, at *8 (N.D. W.Va. Sept. 24, 2007). "[P]rior to considering the *Turner* requirements, the Court must determine whether there has been an infringement in the first place." *Id.*

Here, plaintiff contends that his First Amendment right to "speak, protest, and complain openly, directly, and without reservation to the court" was violated. [Doc. 25 at 15], quoting *Haze*, 961 F.3d at 658. Specifically, plaintiff contends that defendants violated his rights by denying him the ability to communicate with counsel and by denying him phone access and access to writing materials, burdening his right to confidential communications with his attorney and right to access to the courts.

"It is now established beyond doubt that prisoners have a constitutional right of access to the courts." *Bounds v. Smith*, 430 U.S. 817, 821 (1977). When alleging denial of access to the courts, a prisoner must make specific allegations and must also identify an actual injury resulting from official conduct. *Cochran v. Morris*, 72 F.3e 1310 (4th Cir. 1996). "A showing of injury is required in order to avoid adjudication of trivial claims of deprivation." *Id*. at 1317. Actual injury sufficient to sustain a cause of action for denial of access to the courts is present where, for example, an inmate deprived of legal materials

is unable to meet court-imposed deadlines as a result of the deprivation.  ***Roman v. Jeffes***, 904 F.2d 192, 198 (3d Cir. 1990).  However, "the injury requirement is not satisfied by just any type of frustrated legal claim.  Nearly all of the access-to-courts cases in the ***Bounds*** line involved attempts by inmates to pursue direct appeals from the convictions for which they were incarcerated, or habeas petitions.   In ***Wolff v. McDonnell***, 418 U.S. 539 (1974), we extended this universe of relevant claims only slightly, to 'civil rights actions' --i.e., actions under § 42 U.S.C. 1983 to vindicate 'basic constitutional rights.'" ***Lewis v. Casey***, 518 U.S. 343, 354 (1996) (citations omitted).

The claim for violation of the right to free speech in this case significantly overlaps with the Sixth Amendment claim.   Nonetheless, the right to access courts is clearly established as a right under the First Amendment, and the undersigned finds that plaintiff has set forth allegations which amount to an infringement of that right.   Turning to the ***Turner*** test, the undersigned finds that, at the motion to dismiss stage, plaintiff has sufficiently alleged facts which show the "Step Down Program" impinged on his right of access to the courts.   Defendants Sams and Wood argue that the policies restricting plaintiff's access to his attorney were part of the facility's response to COVID-19, and that courts have deemed similar responses to the pandemic constitutionally valid.  [Doc. 21 at 20–21].  However, the Complaint contains allegations that the justification of restrictions as part of a response to COVID-19 was essentially a sham.  The Complaint alleges that despite telling plaintiff's counsel that he was unable to meet with Mr. Lamb due to COVID-19 exposure, Lamb was never placed in a quarantine unit and was permitted to appear in-person in state court one to three days later. [Doc. 1 at ¶¶ 82–85].  If true, this would call into question the "valid, rational connection" between the policy and the legitimate

governmental interest put forward by defendants.

Finally, for the same reasons as claim four, claim five should be dismissed as to defendant Wood because there are no allegations that he was involved in this claim beyond a conclusory allegation that all four defendants violated plaintiff's right to speak with his defense counsel. [Doc. 1 at ¶ 169].  Accordingly, the undersigned recommends that claim five be dismissed against defendant Wood only. Further, for the reasons set forth above, the undersigned finds that plaintiff's right to access courts was clearly established at the time.  *See, e.g.*, **Hudspeth v. Figgins**, 584 F.2d 1345, 1347(4th Cir. 1978).

## F.    Count VI – Denial of Religious Materials

Turning to Count VI, plaintiff alleges that defendants violated his First Amendment right to freedom of religion by denying him religious materials.  Specifically, Lamb alleges he was deprived of a Bible for approximately one month.  Plaintiff alleges that when he was moved from his cell in Unit A1, his religious materials, including Bible, were taken. [Doc. 1 at ¶ 64].  He further alleges that when he asked defendant Tibbs for a Bible, Tibbs responded that plaintiff had "better pray for one;" that Inmate Requests he filed on May 22, 2022, were not answered until June 3, 2022; and that he was not provided a Bible until a month after the requests.  [Id. at ¶¶ 65–67].  The Complaint later makes the conclusory allegation that all four defendants violated plaintiff's First Amendment right to freedom of religion by denying him a Bible.  [Id. at ¶ 181].

"[R]easonable oportunities (sic) must be afforded to all prisoners to exercise the religious freedom guaranteed by the First and Fourteenth Amendment without fear of penalty."  **Cruz v. Beto**, 405 U.S. 319, 322 n. 2 (1972).  However, "[t]here cannot possibly

25

be any constitutional or legal requirement that the government provide materials for every religion and sect practiced in this diverse country." *Id*. at 323 (Burger, C.J., concurring). Further, plaintiff must show that defendants acted with "conscious or intentional interference" with his First Amendment rights. ***Wall v. Wade***, 741 F.3d 492, 500 (4th Cir. 2014).

Defendants Sams and Wood argue that there are no allegations against them related to plaintiff's religious materials, "much less any that could plausibly prove the requisite intent." [Doc. 16 at 22].  Similarly, defendants Tibbs and Costello argue that the timeframe plaintiff was without his Bible was "relatively short" and that there is "nothing in the Constitution [that] compels the state to affirmatively aid inmates in their spiritual journey." [Doc. 31 at 21].

In contrast to defendants' claim that one month is a "relatively short" period, plaintiff points to ***Blankenship v. Setzer***, 681 Fed.Appx. 274 (4th Cir. 2017), in which the Fourth Circuit found that a state prisoner adequately alleged a First Amendment claim where plaintiff was not permitted to bring his Bible during transport to County Jail, resulting in three visits in which he was without his Bible for three to four days each.  The Court concluded that "Given the importance of the Bible to Christianity and Blankenship's religious practice, the burden placed on him by Defendants' actions significantly impeded Blankenship's ability to practice his religion for several days at a time." *Id*. at 278.

First, the undersigned finds that the Complaint fails to allege a claim for denial of religious materials against defendant Wood.  From the allegations in the Complaint, it is not clear that Wood even had knowledge of a violation, let alone that he was personally involved.

In contrast, the other defendants are alleged to have been assigned to the segregation Unit where the deprivation occurred, and plaintiff alleges that he made two requests for a Bible during that time.  The undersigned finds that there are enough alleged facts in the Complaint to survive the 12(b)(6) standard.  Further, in contrast to defendants argument that they are not required to "affirmatively aid" plaintiff in his spiritual journey, the undersigned finds the alleged facts more analogous to ***Blankenship***.  Plaintiff's requests for a Bible did not occur in isolation but in response to defendants taking his Bible from him as part of the move to segregation.  The undersigned finds that Lamb's right to reasonable opportunity to exercise his religious freedom was clearly established at the time the alleged deprivations occurred.  *See, e.g.*, ***Ford v. McGinnis***, 352 F.3d 582, 597 (2d Cir. 2003) ("a prisoner's free exercise right to participate in religious services is not extinguished by his or her confinement in special housing or keeplock.") (citation omitted).

## G.      Count VII – Assault and Battery

Defendants Tibbs and Costello argue that Count VII, alleging assault and battery against defendant Costello, should be dismissed as to defendant Tibbs.  Like Count I, it appears that Count VII was brought only against defendant Costello, and therefore this portion of the Motion should be denied as moot.

## H.      Injunctive and Declaratory Relief

As a final matter, the undersigned notes that although the claims in the Complaint contained requests for injunctive and declaratory relief, plaintiff's response to the Motion to Dismiss voluntarily dismissed those claims.

Finally, to the extent the motions are denied, they should be denied without

prejudice as to defendants' ability to raise the issue of qualified immunity again at a later stage of these proceedings.  *See Tobey v. Jones*, 706 F.3d 379, 393 (4th Cir. 2013).

## VIII. Recommendation

For the reasons set forth above, the undersigned **RECOMMENDS** that Defendants Shannon Sams and Superintendent Joseph Wood's Motion to Dismiss Plaintiff's Complaint [**Doc. 15**] be **GRANTED IN PART**, that Defendants Timothy Tibbs and Michael Costello's Motion for Judgment on the Pleadings [**Doc. 30**] be **DENIED**, and that claims II, III, IV, V, and VI be **DISMISSED** as to defendant Wood only.

**Within fourteen (14) days** after being served with a copy of this Recommendation, any party may file with the Clerk of this Court, **specific written objections, identifying the portions of the Report and Recommendation to which objection is made, and the basis of such objection.**  A copy of such objections should also be submitted to the United States District Judge.  Objections shall not exceed ten (10) typewritten pages or twenty (20) handwritten pages, including exhibits, unless accompanied by a motion for leave to exceed the page limitations, consistent with LR PL P 12.

**Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).**

This Report and Recommendation completes the referral from the district court. The Clerk is **DIRECTED** to terminate the Magistrate Judge's association with this case.

The Clerk of the Court is further **DIRECTED** to provide copies of this Report and Recommendation to all counsel of record herein.

**DATED**: March 29, 2023.

*/s/ James P. Mazzone*

JAMES P. MAZZONE
UNITED STATES MAGISTRATE JUDGE